## RUSHING v. MULHEARN FUNERAL HOME, Inc., et al.

### No. 6215.

Court of Appeal of Louisiana.
Second Circuit.
Jan. 13, 1941.

Warren Hunt, of Rayville, for appellant.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellee.

DREW, Judge.

For a cause of action plaintiff filed the following petition:

"1. That the Mulhearn Funeral Home, Inc., a corporation organized and doing business within the State of Louisiana, and with its domicile and principal place of business in Monroe, Ouachita Parish, Louisiana, and Saint Paul Mercury Indemnity Company, a foreign insurance corporation domiciled at Saint Paul, Ramsey County, Minnesota, but qualified and doing business within the State of Louisiana, with E. A. Conway, Secretary of State, Baton Rouge, Louisiana, as its Resident Agent receiving process, are justly and legally indebted unto your petitioner in solido in the full sum of $16,830.-00, with interest at the rate of 5% per annum from judicial demand until paid, for this to-wit:

"2. That the defendant, Mulhearn Funeral Home, Inc., operates a branch office in Rayville, Richland Parish, Louisiana, for the purpose of serving the public in Richland and surrounding parishes.

"3. That on January 10, 1939, petitioner and one Clyde McCay bargained with the branch office of said Funeral Home in Rayville, Louisiana, whereby the said Funeral Home would furnish an ambulance to transport a sick person named E. A. Valentine from his residence near Archibald, Louisiana, to the Charity Hospital, at Shreveport, Louisiana, for a consideration of $25.00.

"4. That pursuant to said agreement defendant Funeral Home furnished a 1938 Model LaSalle Ambulance for the purpose of carrying the said sick person to Shreveport, Louisiana. That one Elmer Lane, an employee of said Funeral Home, was selected by defendant's branch manager to pick up the patient and transport him to Shreveport.

"5. That Mr. Lane arrived at Mr. Valentine's residence near Archibald, Louisiana, at about four o'clock A. M. on January 10, 1939. That petitioner and Clyde McCay assisted the said Lane in placing the patient in the ambulance, and with the consent of Mr. Lane, petitioner and Clyde McCay entered the ambulance through the back door, and took seats by the side of the patient, so as to accompany him to the hospital and administer to his needs in transit.

"6. That thus situated, the driver of the ambulance proceeded on the journey to Shreveport. That when the driver reached Rayville, Louisiana, he headed in a westerly direction on U. S. Highway 80 toward Shreveport, Louisiana.

"7. That an ambulance, properly speaking, is the back portion of the automobile, which is provided for the carrying of patients, and their attendants. That this ambulance portion of the car is separated from the driver's car by a glass partition.

"8. Petitioner further avers that he was seated on a small stool on the right side of the ambulance about midways thereof. That the patient was lying on the ambulance cot, which said cot was resting lengthwise in the ambulance and occupied the left one-half of the ambulance.

"9. That the driver of the ambulance stopped at Monroe, Louisiana, and ice was purchased for the patient and that the journey to Shreveport was then resumed.

"10. That petitioner in caring for the patient, fed him crushed ice out of a drinking glass. That as the ambulance approached Choudrant, Louisiana, petitioner was desirous of emptying the water out of the drinking glass, which said water had accumulated from the melting ice.

"11. That there was a window in the right front portion of the ambulance proper, which was located immediately in front of petitioner's seat. That petitioner lowered this widow, leaned forward and threw the contents of the glass out of the window.

"12. Petitioner further avers that at this instant the right side door to the ambulance was caught by the gushing air and flew open backward with a violent jerk.

"13. That the door to the ambulance was so constructed that the hinges were fastened to the back side of the door, and that when the door opened it moved outward toward the back of the ambulance.

"14. That the door sprang open, either because of the pressure of petitioner's body resting against it as he placed his arm outside of the window, or because of the pressure of petitioner's knee resting against the inside door, lever or handle.

"15. That at this time defendant's employee, Lane, was driving approximately 60 miles per hour and that when the door sprang open into the rushing air, petitioner grasped at the window ledge of the door; that the opened door formed a barrier to the wind and this caused the machine to become unbalanced. That this tremendous air pressure caused the machine to swerve sideways. That the driver realizing that something had gone wrong applied the brakes hurriedly.

"16. That at this instant petitioner was flung violently out of the door and onto the concrete highway, head first. That petitioner was thrown out of the said ambulance, either because he could not get a good grip on the window ledge fast enough, because the car swerved sharply and threw him out, or because the driver applied the brakes too fast and caused petitioner to be thrown forward and out of the ambulance.

"17. That petitioner was rendered unconscious by the blow he received; that he remained in a critical condition for several weeks. That as a result of said accident, petitioner suffered intense pain and agony, a fractured skull, a permanent head injury, internal hemorrhage and severe lacerations of the head, face, body, upper and lower limbs. That he was confined to bed in a hospital and at his residence for approximately three months, and incurred hospital, medical and drug expense.

"18. That as a result of the aforesaid accident, petitioner was totally incapacitated for a period of eight months, and consequently could not perform the duties necessary to earn a livelihood during that time.

"19. Petitioner further avers that as a result of said accident, he suffered a forty per cent total and permanent disability, which will incapacitate petitioner to such a degree the remainder of his natural life as the result of the head injury, as will be shown upon the trial of this case.

"20. That petitioner was cut on his forehead, said cut forming a visible scar, and has permanently disfigured petitioner.

"21. That petitioner itemizes his expenses, loss of time and injuries as follows:

| | |
|---|---:|
| Bills for physicians' services... $ | 200.00 |
| Hospital expense .............. | 100.00 |
| Drugs, etc. .................... | 30.00 |
| Loss of earnings for 8 months, (worth $150.00 per month)... | 1,200.00 |
| Pain, suffering and anguish.... | 3,000.00 |
| Fractured skull ............... | 3,000.00 |
| Internal hemorrhage ......... | 800.00 |
| 40% permanent and total disability, due to head injury..... | 7,000.00 |
| Head, face, body, upper and lower limbs, lacerations and bruises......................... | 500.00 |
| Permanent disfigurement because of visible scar across petitioner's forehead .......... | 1,000.00 |
| Total ................... | $16,830.00 |

"22. That petitioner had no knowledge that there was a side door on the right side of said ambulance; that it was during the darkness of the night that petitioner took his seat in said machine and that it was dark at approximately 5:30 A. M., at the time the accident occurred. That petitioner had several times switched the inside lights on, but had never had cause to notice that the said door was there.

"23. That the said Mulhearn Funeral Home, Inc., is responsible for the injuries and damages suffered by petitioner, in that the accident happened solely through the gross negligence of said Funeral Home in the following respects:

"1st. That the said Funeral Home was grossly negligent furnishing an ambulance for the use of the public, and especially to petitioner, with the side door so constructed that when it opened it swung backward into the air.

"2nd. That the said Funeral Home was grossly negligent in furnishing an ambulance for the use of the public and especially to petitioner, with the door aforesaid so constructed, and in neglecting to remove the door handle on the inside of the said ambulance, so that the door could only be opened from the outside.

"3rd. That it was grossly negligent in allowing the door handle to remain intact on the inside, and in not placing a warning sign by the said door handle informing persons riding in said ambulance, of the dangerous consequences likely to result if said door should be opened while the machine was traveling.

"4th. In allowing the door aforesaid to shake ajar so that the least pressure by petitioner's body would cause the said door to open into the wind.

"5th. That the said Funeral Home attendant was grossly negligent in not informing petitioner of the existence of said side door and inside handle thereto, and in not cautioning petitioner not to lean against the said door.

"24. That the said Elmer Lane was acting within the scope of his employment and authority in making this said trip to Shreveport as driver of the ambulance, and that he was furthering the said Funeral Home's business.

"25. That Elmer Lane and all of the employees and officers of said Funeral Home had knowledge that side doors of ambulances constructed like the one aforesaid, were dangerous to life and limb if opened in transit. That the said Lane and all of the officers and employees of the said Funeral Home have experienced accidents of a like nature in this and other ambulances used by them; and further, that they have learned from other funeral homes of the danger existing when ambulances with side doors constructed such as this one, were used.

"26. That the accident happened in Lincoln Parish, Louisiana, but that this Honorable Court has jurisdiction over the offense by virtue of the fact that the defendant is domiciled in Ouachita Parish.

"27. That the Rayville Branch of the said Mulhearn Funeral Home is an extension of the main office at Monroe, Louisiana, and is an integral part of said corporation; that the said branch office had the authority to lease ambulances for the purpose of transporting patients and accompanying passengers, in the furtherance of the corporation's business.

"28. That the said ambulance, with the side door so constructed, was dangerous to the life and limb of individuals riding in said machine. That the door constituted a trap, and that any reasonably prudent man, such as petitioner, would be likely to be injured or killed without realizing what had happened, especially in the dark of the night time.

"29. That the gross negligence of defendant as set out in the foregoing paragraphs was the sole and only cause of the accident.

"30. That the defendant Funeral Home, at the time of the accident, carried a policy of liability insurance on the 1938 LaSalle Ambulance, with the Saint Paul Mercury Indemnity Company, of Saint Paul, Minnesota. That said policy was a broad, general liability policy and protected the insured against accidents of any nature, for which the said Funeral Home should become liable. That petitioner has not been allowed to inspect said policy of insurance, but that he has been informed and, on the basis of said information, avers that said policy covers the said accident in question.

"31. That therefore petitioner is entitled to a judgment against the defendant, Mulhearn Funeral Home, Inc., and the defendant, Saint Paul Mercury Indemnity Company, in solido, in the full and true sum of $16,830.00.

"32. Petitioner avers numerous amicable demands, without avail." (The prayer followed.)

Defendant excepted to the petition on the grounds that it set forth neither a cause nor a right of action.

The lower court sustained the exception of no cause of action and dismissed plaintiff's suit. From this judgment plaintiff is prosecuting this appeal.

■ For the purpose of determining the exception, the allegations of fact set forth in the petition are taken as true.

In his brief plaintiff has discussed the petition—

1st. As to the relationship between plaintiff and defendant or nature of the contract;

2nd. Degree of care owed by defendant to plaintiff under the relationship existing under the contract;

3rd. Actionable negligence of defendant, if any; and

4th. Application of the doctrine of res ipsa loquitur.

■ It is plaintiff's contention here that he was a pay passenger in the ambulance. The allegations of the petition fail to disclose · such a contract. To the contrary, it is alleged that petitioner and Mr. McCay employed the Mulhearn Funeral Home, Inc., to transport by ambulance from Archibald, Louisiana, to Shreveport, Louisiana, a sick man named E. A. Valentine, the consideration being $25; that pursuant to that agreement an ambulance was sent to convey him to Shreveport; and that the ambulance was in charge of one of the Funeral Home's employees. After the sick man was placed in the ambulance, petitioner and Mr. McCay, with the consent of the ambulance driver, entered the ambulance to administer to the sick man during the course of the trip. It is not alleged that the contract of hiring included passage for plaintiff, and the allegation of consent on the part of the ambulance driver negatives that idea. Plaintiff was nothing more than a licensee or guest in said ambulance under the allegations of the petition and the only care owed to him by the driver was ordinary care and not to wilfully injure him. Plaintiff has not alleged any acts of negligence on the part of the driver. It is not alleged that the manner in which he drove or operated the vehicle had anything to do with causing the accident.

Plaintiff contends and alleged that it was negligence for the defendant Funeral Home to use an ambulance physically constructed as was this one, viz., with a side door opening toward the rear of the vehicle and in neglecting to remove the inside door handle so the door could not be opened from the inside, and in not placing a warning sign on said inside door handle; also that the driver was negligent in not warning petitioner of the side door and inside handle and failing to caution him about leaning against the door.

■ Courts have in many instances and will again take cognizance of the fact that many vehicles of the kind complained of by plaintiff have side doors which open to the rear, that is, they are hung by hinges at the rear, instead of the front. In fact, the front doors of most passenger cars are hung from the rear.

■ Petitioner is exacting a degree of care of defendant which is not justified in law. It might have been different if defendant had been transporting one of immature age or one without his normal faculties, but under the pleadings here, we are justified in assuming that plaintiff was of mature age and possessed normal faculties.

We can imagine a case where defendant might be held liable if it had allowed the door to get into a condition where it could not be opened from the inside. It certainly was not negligence for defendant to use the ambulance constructed as it was, and defendant's driver was not legally obliged to inform plaintiff of a condition which could have been seen by him upon ordinary observation of his surroundings.

■ The doctrine of res ipsa loquitur has no application in this case.

In Article 14 of plaintiff's petition he positively alleged the cause of the accident —"That the door sprang open either because of the pressure of petitioner's body resting against it as he placed his arm outside of the window, or because of the pressure of petitioner's knee resting against the inside door, lever or handle."

■ In either instance alleged by plaintiff, he would be guilty of contributory negligence which would be a bar to his recovery. He does not allege any defect in the door lock. The negligence alleged is that the door was constructed with a lock which could be opened from the inside.

We are convinced that plaintiff has failed to allege a cause of action and that the judgment of the lower court is correct. It is therefore affirmed, with costs.