FOURNET, Justice.
 

 Robert W. Comer and his wife, Mrs. Essie Christine Hicks Comer, whose 17 month old daughter Dora Jane was fatally injured when she was struck by the automobile owned and driven by her uncle, Rev. Van M. Dykes, instituted this suit under the provisions of Act No. 55 of 1930 to recover damages in the sum of $15,000 each from the insurer of the automobile, the Travelers Insurance Company. The matter is now before us on a writ of certiorari granted the plaintiffs for a review of the judgment of the Court of Appeal for the First Circuit affirming the judgment of the district court dismissing their suit. 27 So.2d 438.
 

 On July 10, 1943, the Rev. Dykes, who, with his wife, had been residing with the Comer family in their home at 917 Mayflower Street in Baton
 
 Rouge,
 
 Louisiana, was engaged in moving some of his possessions to St. Francisville, Louisiana, where he had been assigned as a minister of the Baptist church. The car in question had been loaded with some of his effects from the back door of the residence and backed out into the driveway where it was parked parallel with the front porch while he went into the house to bathe and shave before departing, the front porch of the house being to the right of the car and the car’s right rear bumper being about flush with the south side of the hedge surrounding the porch and the front of the car about even with the outside wall of the house. This house, located on a street running east and west, faces south, and its porch, extending some 22.2 feet across the front with steps at the extreme east end, is entirely surrounded by a very dense tall hedge, except that portion of the porch where the steps lead down into the yard. After drinking coffee in the kitchen around 2:30 p. m., the Rev. Dykes walked down the hall and onto the front porch, accompanied by his daughter Kathryn. The child apparently followed them to the porch, although it is not entirely clear exactly when she got there. Rev. Dykes testified the child came out on the porch after he and his daughter arrived there and that he kissed her good-bye and left her with his daughter. His daughter’s statement, made shortly after the accident occurred, substantially corroborates him in this respect although two years later, when the case was tried, she testified on direct examination she could
 
 *179
 
 not recall whether the child walked out with them, was already on the porch, or was in the house and came out later; and while on cross-examination she reiterated she did not recall the child being on the porch, she conceded that if she made a statement to that effect soon after the accident and her father said the child was there it must be correct. After Rev. Dykes kissed the child and his daughter good-bye he turned, and, leaving them standing by the swing some three feet from the west end of the porch, he walked down the steps, around the hedge, and across the front yard to his car, looking back toward the porch to see if the way was clear. Just as he was about to start his car, his daughter, still on the porch, moved toward the west end of the porch and gave him some instructions about messages to friends in St. Francisville, to which he listened, starting his car in the meantime. The conversation having been completed, he then proceeded to back up, looking toward the rear of the driver’s side to see if the driveway in back was clear. Almost immediately he felt a bump which he at first thought was a branch of the hedge hitting against the rear right fender but almost at the same time realized could be the child. He thereupon instantly brought the car to a stop and got out, only to have his daughter, who had run down into the yard, scream (there is some testimony to the effect that she screamed before she left the porch) for him to pull up because he had stopped the car on the baby’s bcciy. He then got back into the car and pulled up three or four feet, getting out again. He was shocked and stunned when he saw he had run over the child. His wife and Luther Gillingham, a neighbor who appeared almost immediately on the scene, took the child to the hospital, where she died within a few minutes after arrival.
 

 It is the contention of the plaintiffs that the Rev. Dykes was negligent in backing his automobile in the driveway, having just left his infant niece whom he knew was extremely fond of him and followed him about everywhere if unrestrained, without first assuring himself there was no one in the path of his backing car.
 

 The defendant, on the other hand, contends that the Rev. Dykes, knowing the child was on the porch with his daughter and having assured himself there was nothing in the way before starting his car, had reason to believe she was safe and the right to assume he would be warned if she changed her position, and that he was, therefore, not negligent in backing up, having first looked to the rear to ascertain if his way was clear.
 

 It is the generally accepted rule of law that “If a driver has reason to anticipate that a child might be near his automobile, it is his duty to see that the way is clear before starting the vehicle into motion, but, if he has no reason to anticipate the presence of children near his car, negligence cannot be predicated on the mere fact that he started his machine, injuring the child.”
 
 *181
 
 2 Blashfield’s Cyclopedia of Automobile Law and Practice, § 1509. See, also, Heikkila v. Standard Oil Co., 193 Wis. 69, 213 N.W. 652; Pritchard v. Henry, Tex.Civ.App., 200 S.W.2d 651; and Cioffi v. Lowell, 316 Mass. 256, 55 N.E.2d 411.
 

 In reaching the conclusion that there •was no negligence on the part of Rev. Dykes, the Court of Appeal says [27 So.2d 442] : “In this case when Reverend Dykes last saw the child she was on the porch of the Comer home and, we would say constructively if not actually as far as he was concerned, in the care of his daughter, an adult person over twenty-two years of age. She was not playing in the yard nor was she anywhere near the automobile. He was further precautious however, for after he had walked down from the porch into the yard and up to his automobile, he again looked towards the steps to make sure that there was no danger of his backing his car. The child then was nowhere within his sight and it is our opinion that he then had the right to assume that she was safe and that he could set his car in motion as he intended to do.”
 

 In a dissenting opinion one of the judges expressed the opinion that Rev. Dykes should have anticipated the child, being so attached to him, would go to him if she had a chance to do so; that he should have known there was grave danger the child would follow him; and that knowing these things he was guilty of negligence because he failed to request his daughter to watch the child.
 

 The material facts of the case, as outlined above, are uncontradicted except in the two instances pointed out. We think the evidence clearly shows the child followed Rev. Dykes ón to the porch and that she was still there when he left the porch and not in the yard when he entered his car. And in our opinion it is immaterial for a decision in this case whether his daughter screamed just prior to the accident, and while still on the porch, as testified to by two young people who lived across the street, or when she saw the child under the wheel of the car after she ran down into the yard, as testified to by her, her father, and Mr. Gillingham, the neighbor, for under the circumstances, having last seen the child on the porch with his daughter, an adult of responsible age, in a place of safety, Rev. Dykes was justified in assuming, as a reasonable man, that if the child’s position was changed to a more perilous one, he would be warned by his daughter, and that since he had not been so warned it was safe for him to back up. Consequently, having no actual knowledge of the child’s perilous position in the vicinity of his car, he used all of the care that could have been expected of an ordinarily prudent person.
 

 For the reasons assigned, the judgment of the Court of Appeal for the First Circuit Court is affirmed.
 

 O’NIELL, C. J., absent.