110 So.2d 789 (1959)
Lillian Marchand MINTON
v.
CONTINENTAL INSURANCE COMPANY.
No. 4758.
Court of Appeal of Louisiana, First Circuit.
March 23, 1959.
Rehearing Denied April 27, 1959.
*790 Benton & Moseley, LeBlanc & LeBlanc, Baton Rouge, for appellant.
Breazeale, Sachse, Wilson & Hebert, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, TATE, JONES and LANDRY, JJ.
LANDRY, Judge ad hoc.
This is an appeal from a judgment of the Nineteenth Judicial District Court, East Baton Rouge Parish, dismissing the suit of appellant Lillian Marchand Minton against appellee, The Continental Insurance Company, for damages in the sum of $10,000 for personal injuries sustained in an automobile accident which occurred in the City of Baton Rouge on December 10, 1956.
Plaintiff, a guest passenger in an automobile owned and being operated by her husband, C. J. Minton, sustained serious personal injuries as the result of being violently thrown from the vehicle when the door of the car suddenly and unexpectedly opened as her husband was executing a left turn.
Pursuant to the authority contained in the Direct Action Statute of this state, LSA-R.S. 22:655, suit was instituted solely against The Continental Insurance Company, liability insurer of the Minton automobile.
As the basis of her cause of action, plaintiff invokes the doctrine of res ipsa loquitur and, in the alternative, charges her husband with negligence in speeding up to make a left turn before the traffic light controlling the intersection turned from green to red; operating his automobile with unsafe doors and making a left turn in a careless and imprudent manner.
The answer of defendant, The Continental Insurance Company, denies its insured was guilty of any negligence whatsoever, denies applicability of the doctrine of res ipsa loquitur and, in the alternative, charges plaintiff was contributorily negligent in failing to close or properly secure the door of the automobile, failure to brace herself *791 against forseeable body movement knowing the driver intended to make a left turn, sitting too close to the door and knowingly or unknowingly moving the door latch causing the door to open and failure to provide for her own safety by ascertaining that the door was properly closed and secured.
The trial judge did not favor us with written reasons in support of his judgment rejecting plaintiff's suit. Accordingly, we are not informed as to his conclusions on the issues presented.
Plaintiff and her husband being the only witnesses to the accident, they alone testified concerning the details of this unfortunate occurrence.
The evidence shows that plaintiff (age 67 years) and her husband (age 75 years) reside at the corner of North Ninth and Laurel Street, Baton Rouge, Louisiana, North Ninth Street being a one way south bound street running north and south and Laurel Street being a two way street running east and west. On the morning of December 10, 1956, at approximately 10:45 A.M., plaintiff's husband prepared to drive plaintiff to the office of a chiropodist with whom plaintiff had an appointment. Mr. Minton drove his 1948 Plymouth Club Coupe to the North Ninth Street entrance to his home, parked parallel to the west curb of the street and waited for Mrs. Minton to emerge from the house. As plaintiff approached the automobile, Mr. Minton, without leaving the driver's seat, reached over and opened the right door of the vehicle so that plaintiff might enter. Plaintiff entered the car and only partially closed the door, whereupon her husband leaned over and completely closed and locked the door.
The route which Mr. Minton intended to take required that he turn left from North Ninth Street onto Florida Street which latter street runs east and west and intersects North Ninth Street one block south of Laurel Street. Upon driving away from his home, he proceeded south on North Ninth Street a distance of one block until he reached the intersection of Florida Street where he commenced a left turn during the course of which the right door of the car suddenly opened causing plaintiff to be thrown from the vehicle onto the street.
Mr. Minton testified that upon leaving his home he drove south along North Ninth Street at a speed of approximately 10 to 12 miles per hour and upon approaching the intersection of Florida Street, he pulled over near the east curb of North Ninth Street in order to facilitate his intended left turn. His evidence shows Florida Street is a main traffic artery of the City of Baton Rouge consisting of four traffic lanes, the two northern lanes thereof being dedicated to the use of westbound vehicles and the two southern lanes thereof assigned for the use of eastbound motorists. As Minton prepared to turn left, he noted the presence of a westbound vehicle parked against the north curb of Florida Street about 25 or 30 feet from the corner and next to this parked automobile, he observed a westbound motorist stopped on Florida Street in obedience to an unfavorable traffic signal. He also noted the presence of an eastbound vehicle parked against the south curb of Florida Street a short distance from the intersection. The presence of these vehicles in the positions indicated, left only one lane open for his turn, namely, the left or inside eastbound lane. Minton proceeded slowly past the two westbound vehicles (the one parked next to the curb and the one waiting for the light to change), and then made a sharp or, as he expressed it, a "hairpin" turn into the vacant inside eastbound lane of Florida Street. Approximately half way his turn, the right door of the car flew open and plaintiff fell from the automobile.
Minton's testimony leaves the distinct impression that he is ordinarily a slow and careful driver. He estimated his speed variously at from 10 to 15 miles per hour and stated he may have accelerated as he commenced the turn. He was at a loss to explain the cause of the accident inasmuch *792 as he had experienced no previous difficulty with the door of the automobile and his personal examination of the door following the accident revealed no defect in either the door or its mechanism. In this connection, it is desired to point out his testimony further shows he retained the automobile for quite some time subsequent to the accident and had no further trouble with the door. Although Minton frankly conceded he was unable to determine exactly why the door suddenly opened, he theorized the presence of a "hump" or "bump" in the center of Florida Street may have caused such an unexpected development. He testified the car was passing over this "hump" at the time the door opened and he "guessed" that traveling over this raised portion of the roadway placed a stress or strain on the body of the automobile causing the door to open. The "hump" referred to was described as an elevation of the center of Florida Street resulting from the action of the city authorities in causing abandoned trolley tracks on Florida Street to be covered over with asphalt to make said street smooth. Minton explained that covering the trolley tracks with asphalt caused the center of Florida Street to be slightly elevated. He could not estimate the height of such elevation but did state the "hump" sloped off toward the curb on each side and tapered off to nothing on either side of the center of Florida Street. The condition described, according to Minton, had existed at this particular intersection for several years prior to the accident. We attribute to Mr. Minton's veracity and inherent honesty the fact that in his testimony he did not attempt to establish that excessive speed on his part was the basic cause of the accident.
Plaintiff's own testimony regarding the events immediately preceding the accident corroborates that of her husband. Regarding the movement of the automobile at the time of the accident, Mrs. Minton testified that as her husband started to turn, she was leaning back against the seat looking in her purse and the car suddenly gave a lurch as if the driver accelerated his speed and it was then that the door opened and she fell from the car. She was positive she did not touch the door or the handle which controls it; she was likewise positive she was not thrown against the door.
Learned counsel for plaintiff vigorously argues the rule of res ipsa loquitur is applicable to the facts of this case. In support of this position, he has cited the following four cases previously decided in the courts of this state, namely, Rushing v. Mulhearn Funeral Home, Inc., La.App., 200 So. 52, Morales v. Employers Liability Assurance Corporation, Ltd., 202 La. 755, 12 So.2d 804, Ardoin v. Millers Mutual Fire Insurance Company of Texas, La.App., 92 So.2d 123 and Larkin v. State Farm Mutual Automobile Insurance Company, 233 La. 544, 97 So.2d 389, all of which have held the doctrine of res ipsa loquitur inapplicable to factual situations similar to the circumstances herein involved.
At this juncture we deem it advisable to point out it is the settled jurisprudence of this state that the doctrine of res ipsa loquitur is not a rule of pleading or substantive law, but rather a rule of evidence. The principle is one to be invoked only in those instances where the circumstances surrounding the occurrence of an accident are of such a nature that negligence may be inferred.
Rushing v. Mulhearn Funeral Home, Inc., supra, involved a claim for personal injuries sustained by a plaintiff who was injured while attending a patient being transported in defendant's ambulance, the injuries being received when the door of the ambulance opened and plaintiff was thrown from the vehicle. The Court of Appeal, Second Circuit, held the doctrine of res ipsa loquitur inapplicable and dismissed plaintiff's suit. Astute counsel for plaintiff maintains the ruling of the Rushing case is inapplicable to the case under consideration because in the Rushing case plaintiff alleged in his petition that the door of the ambulance opened either because of *793 the pressure of plaintiff's body against it or because of plaintiff's knee resting against the inside door lever or handle. Counsel contends no such allegation appears in the petition in the present case and the evidence in the instant case shows that plaintiff herein did not lean against or come in contact with the door in any manner.
In the Morales case, supra [202 La. 755, 12 So.2d 808], plaintiff sued to recover damages for personal injuries sustained when she fell from an ambulance while accompanying her ill daughter to a hospital. The trial court rendered judgment for defendant and on appeal the Court of Appeal held the doctrine of res ipsa loquitur applicable but affirmed the judgment of the trial court on a finding that defendant successfully rebutted the presumption of evidence created thereby. The Supreme Court granted a writ of review and in the course of its decision reversing the ruling of the Court of Appeal on the question of applicability of the rule of res ipsa loquitur, stated:
"Counsel for plaintiff urges that the doctrine of res ipsa loquitur is applicable to this case and that in the absence of evidence by defendants showing how the accident occurred, or, at least, that they were without fault, there results from the accident itself a presumption of negligence which defendants must overcome if they are to defeat plaintiff's claim.
"It is fundamental that negligence is never presumed from the happening of an accident, but the happening of an accident with its attendant circumstances must justify the inference of negligence. Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447.
"To render the doctrine applicable in an automobile accident, the accident must be one which ordinarily could not happen except through defects in the car or fault in its operation, or both. But the doctrine applies only where the circumstances leave no room for a different presumption, and it must appear that the probable cause was within the control of the operator of the automobile against whom the doctrine is sought to be invoked. 5 Am.Jur., Automobiles, § 607, p. 839.
"The plaintiff's case is predicated on the proposition that the door of the ambulance, or its lock, was defective, and that the door swung open because of these defects, or because of the negligent operation of the car.
"The facts are that the accident happened at a place where the road was smooth and straight and while the ambulance was being driven at a speed which was not excessive. There was nothing wrong with the door of the ambulance or its lock, and the ambulance was not driven in such a way as to cause the door to swing open. The door could not open except by some persons turning its handle either on the inside or on the outside.
"According to the regulations of the hospital, the driver of the ambulance was the only occupant of the driver's seat. The seat was separated from the rear portion of the ambulance by a sliding glass panel or panels. The first the driver knew of the accident was when he heard one of the occupants of the rear portion of the ambulance exclaim, `Mamma dead,' `Mamma dead.' He immediately brought the ambulance to a stop, turned the ambulance around, and drove back to where plaintiff was lying on the roadway after her fall from the ambulance.
"The factual situation which we have hereinabove set forth is such as to render the doctrine of res ipsa loquitur inapplicable in this case. It is true that plaintiff, her son, and her son-in-law steadfastly maintained that neither plaintiff nor any one else moved at all, or touched the door handle, but none of them knew how the accident actually *794 happened. At one portion of his testimony, Pete Morales, plaintiff's son, admitted that he did not know whether his mother opened the door or not. It is difficult to understand how it was possible for the occupants of the ambulance to sit `squeezed together' without any movement being made by any of them. Plaintiff and her son-in-law occupied the front seat, plaintiff being nearest the driver and next to the door through which she fell. It is not at all beyond the realm of possibility that the accident might have been caused by plaintiff inadvertently pressing down upon the handle of the door, since this was the only way in which the door could have been opened.
"It is not an unusual occurrence for an occupant of an automobile to inadvertently lean against the door, or to depress its handle in such a way as to cause the door to fly open, and in many cases causing the occupant to fall out of the car.
"It is the duty of plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked. Quass v. Milwaukee Gas Light Co., 168 Wis. 575, 170 N.W. 942; Klein v. Beeten, 169 Wis. 385, 172 N.W. 736, 5 A.L.R. 1237."
Counsel for plaintiff ingeniously seeks to distinguish the Morales case from the case at bar by pointing out that in the Morales case the accident occurred on a straight smooth road while the ambulance was being operated in a careful manner, whereas, in the present case a left turn was being made at an intersection where there was a defect in the roadway, namely, the "hump" or "bump" referred to by Mr. Minton. Learned counsel seeks to further distinguish the Morales case on the basis that in said case it was found as a fact that several persons were squeezed tightly into the ambulance while in this case only two persons occupied the seat of the automobile. We do not consider these factual distinctions sufficient to characterize the accident in question as being so unusual and out of the ordinary as to permit application of the rule of res ipsa loquitur thereto.
Ardoin v. Miller's Mutual Fire Insurance Company, supra, decided before this court, involved an action for the death of a decedent who fell from the rear seat of an automobile when the door unexpectedly opened as the car was being driven at a speed of 45 miles per hour on a public highway. This court held the doctrine of res ipsa loquitur was inapplicable to such a situation. Counsel for plaintiff argues the facts in the Ardoin case distinguish it from the case at bar. He points out that in the Ardoin case, the accident occurred on an ordinary black top road, that there were no apparent defects such as holes in the vicinity of the accident, that the driver was operating the vehicle in a careful and prudent manner and there was no proof of any act on the part of the driver which caused the vehicle to swerve with sufficient force to cause the door to open. Distinguished counsel contends the evidence in the instant case shows the driver was executing a sharp left turn while traversing a hump in the street and the turn was made so sharply as to cause the door to open. A careful review of the entire testimony convinces us the foregoing conclusions reached by counsel for plaintiff are without foundation in the record.
The most recent decision on the question presently under consideration is that of Larkin v. State Farm Mutual Automobile Insurance Company, supra [233 La. 544, 97 So.2d 391], in which the following appears:
"A determination of a proper instance for application of the principle of res ipsa loquitur has been the subject *795 of volumes of discussion by learned jurists and legal scholars, who have been at pains to point out that the maxim means only that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that the rule rests for its justification upon the common experience that accidents from such causes do not commonly occur in the absence of negligence; and that it is the lack of direct evidence indicating negligence on the part of the defendant as the responsible human cause of a particular accident which actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense. It is generally conceded that res ipsa loquitur in no way modifies the rule that negligence will not be presumed. The application of the rule does not, therefore, dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage. When all the evidence is in, the question is still whether the preponderance is with the plaintiff. All that is meant by res ipsa loquitur is `that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty.'
"Many instances are noted where the doctrine, though invoked, has no application; e. g., it is obvious that when there is, in addition to evidence disclosing the physical cause of the accident, either direct or circumstantial evidence which conclusively repels any inference of negligence that might otherwise arise, the plaintiff is deprived of any practical advantage from the rule. Nor is a resort to res ipsa loquitur warranted in cases where the existence of negligence is an immaterial issue, such as cases dealing with food and drink for human consumption, since the manufacturer insured his product to be free from taint or injurious substances; or where the opposing parties or their witnesses are present and direct testimony as to the cause of the accident is available; and an accident due to a collision between two private vehicles is not, in the absence of further proof, a proper occasion for application of the rule, since it is improper to assume that one driver, rather than the other, was negligent, or to ignore the fact that the collision might have been caused by factors outside the control of either. It necessarily follows that the maxim is not appropriate where, from the nature of the facts, it is reasonable to assume that the actions of the defendant may have been caused by the negligence of another. In the case of Morales v. Employers' Liability Assur. Corp., 202 La. 755, 12 So.2d 804, this Court aptly stated: `It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason *796 for the rule fails and it can not be invoked.' 202 La. at page 769, 12 So. 2d at page 808."
We interpret the cited decisions as establishing the jurisprudence of this state to the effect that determination of the issue of applicability of the doctrine of res ipsa loquitur to the case of a guest passenger who falls from a moving vehicle because of the sudden and unexpected opening of a door, depends upon a consideration of all the facts and circumstances of each particular case. These cases establish the rule that in such instances plaintiff must affirmatively prove negligence and, while the inference of negligence imputed to defendant by application of the rule constitutes such proof, the rule will only be invoked where the circumstances of the accident leave no room for a presumption other than negligence on the part of the defendant.
The courts of this state are in accord with the generally recognized rule that in order for the doctrine of res ipsa loquitur to apply, the instrumentality causing the injury must be within the exclusive control of the defendant. We do not believe it logical to conclude that all the doors of a vehicle are under the exclusive control of the driver. The primary obligation of the operator of a vehicle is to devote his attention to the road ahead for therein lies the greatest source of danger to himself and his guests. A guest passenger, seated next to the door of a vehicle, is not totally without obligation to determine that the door is tightly and securely closed. In the instant case, plaintiff herself was in closer proximity to the door than was the driver and was in a better position than the driver to determine whether or not the door was properly closed. It is common knowledge that passengers in automobiles are inclined to raise and lower the windows in order to insure their personal comfort and, it is not unusual or uncommon for the passenger nearest the door of an automobile to secure the lock out of an abundance of precaution for his or her own personal safety. The evidence in this case shows plaintiff to be a woman of mature age, wisdom and understanding and further indicates she was familiar with the automobile which was the family car.
Considering the entire evidence, we conclude the circumstances attending the accident herein involved are not of such a nature to warrant or justify the inference of negligence on the part of Mr. Minton and consequently, the doctrine of res ipsa loquitur is inapplicable.
The alternative allegations of negligence charged against plaintiff's husband are not supported by the evidence. The first such allegation is that Mr. Minton was negligent in accelerating the speed of the automobile to complete his intended turn before the traffic light changed from green to red. The only positive testimony on this point is that of plaintiff herself. She stated that about midway the turn, the car seemed to give a lurch as if the driver suddenly increased his speed. An analysis of her testimony leads us to conclude that although she was certain the car did swerve, she was not at all certain the lurching of the vehicle caused the door to open. Although Mr. Minton testified he accelerated his speed when he commenced the turn, his testimony does not indicate that the vehicle lurched or swerved. On the contrary, he repeatedly testified he never exceeded 15 miles per hour. In a statement given defendant's adjuster shortly after the accident, Minton stated he was driving at approximately 10 miles per hour at the time of the accident. Considering all of the evidence, we believe this estimate to be substantially correct. Minton's testimony further indicates he was making a sharp turn but he did not testify the turn was so sharp that it caused the vehicle to lurch or swerve. As previously pointed out, his testimony as a whole leaves the impression he did not know what caused the door to open. Had he honestly believed that either excessive speed or the sharp turning of the automobile was responsible *797 for the accident, he most surely would have so testified.
Similarly the evidence fails to sustain plaintiff's charge that Minton was negligent in not properly maintaining his automobile and that he was operating said vehicle in an unsafe condition. There is absolutely no proof whatsoever in the record to establish plaintiff's contention that the door of the automobile was defective or improperly maintained. On the contrary, the testimony shows that Mr. Minton personally examined the door following the accident and found it to be in good working order. The evidence further shows that although the automobile was eight years old, it was maintained in reasonably good condition and was retained by its owner for an extended period subsequent to the accident.
Finally, plaintiff contends her husband was negligent in making the turn in a careless manner. We find no proof of such negligence in the evidence. The facts are the driver was attempting a left turn on a city street while traveling at a speed of approximately 10 miles per hour. Admittedly the turn was rather abrupt but, considering the extremely slow speed of the vehicle, we do not find the maneuver was executed so sharply or abruptly as to constitute negligence on the part of the driver. We believe Mr. Minton did accelerate his speed slightly during the course of his turn but the evidence fails to show that his action in this regard caused the vehicle to lurch or sway with unusual or extraordinary intensity.
It is elementary that the mere occurence of an accident does not give rise to a presumption of negligence. We deem this principle to be so well established as to require no citation of authority in support thereof.
The jurisprudence of this state is well settled to the effect that the burden of proof is incumbent upon plaintiff to establish negligence by a fair preponderance of the evidence. In the case at bar, plaintiff has failed to discharge the burden of proof required by the laws of this state and, accordingly, her claim must be rejected. Beard v. Morris & Co., 156 La. 798, 101 So. 147, Portier v. Picou, La.App., 3 So. 2d 295, Comer v. Travelers Insurance Company, 213 La. 176, 34 So.2d 511, Simon v. Miller, La.App., 44 So.2d 123, Ricker v. Salcedo Distributing Co., La.App., 102 So.2d 330.
For the reasons assigned, the judgment of the trial court is affirmed.