[No. 35197. *En Banc.* October 6, 1960.]

PORTER G. ROSE *et al., Appellants,* v. GEORGE NEVITT, *Respondent.*[1]

[1]Reported in 355 P. (2d) 776.

*Robinson, Morse, Landerholm & Memovich, Walter H. Robinson, John E. Morse, Irwin C. Landerholm, Steven A. Memovich,* and *Duane Lansverk,* for appellants.

*Garver & Garver* and *R. DeWitt Jones,* for respondent.

OTT, J.—June 23, 1958, at approximately ten o'clock a.m., George Nevitt, a twenty-six-year-old bachelor, drove his 1950 Buick Roadmaster automobile to the farm residence of his friend, Porter G. Rose, near Ridgefield, Washington, for a social visit, as he had done frequently for several years. The Rose family consisted of Porter G. Rose, his wife, Bernice, and their eight children: Lillian, Robert, Barbara, Billy, Philip, Ricky, Paul, and Rodney, aged seventeen years, fifteen, twelve, eleven, five, four, three, and fifteen months, respectively.

About two o'clock in the afternoon, Nevitt drove Robert and his friend, Clyde Thomas, to a swimming place on the river, a short distance from the Rose farm. He returned for the swimmers about four o'clock p. m. Several of the Rose children, including Rodney, accompanied him. Upon returning to the Rose farm, Nevitt stopped his automobile at the rear of the residence, approximately forty-five to sixty feet from the kitchen door. Nevitt and the children went inside the house. Rodney was carried into the house by one of the children, and was placed on the floor. Nevitt

thereafter saw Rodney crawling and playing on the floor in the living room and the kitchen.

Nevitt visited with the Rose family in the house for approximately another hour, and then decided to leave. Barbara accompanied him to his automobile. Nevitt saw the boys playing softball on the lawn and, as he looked at his automobile, he did not see any children near it. No one saw Rodney outside the house. Nevitt entered his automobile and started the motor. Barbara leaned against the car on the driver's side and talked with him through the open window for about ten minutes. Billy joined them in the conversation. Philip, Ricky, and Paul continued to play ball on the lawn within view of Nevitt's automobile. Robert and his friend, Clyde Thomas, were inside the house drinking coffee. Lillian was sitting on the front porch, within view of Nevitt's automobile.

When Nevitt started to leave and had backed the Buick approximately five feet, Barbara screamed that he had run over Rodney. Rodney was then lying under the car, on the driver's side, approximately halfway between the front and rear wheels. Barbara picked him up. Nevitt took the baby from Barbara, rushed him into the Rose home, and then to the hospital. Rodney died as a direct result of the injuries.

Porter G. and Bernice L. Rose commenced this action against Nevitt to recover damages for the wrongful death of their son. The cause was tried to the court and a jury. The court granted defendant's motion for nonsuit at the close of the plaintiffs' case, ruling that, as a matter of law, the defendant was not negligent.

From the judgment of dismissal, plaintiffs appeal.

Appellants' sole assignment of error is directed to the court's granting of the defendant's motion for nonsuit.

In deciding this issue, the test to be applied is whether there is any evidence or reasonable inference from the evidence that the respondent was negligent. *Bidlake v. Youell, Inc.*, 51 Wn. (2d) 59, 315 P. (2d) 644 (1957); *Pearsall v. Paltas*, 48 Wn. (2d) 78, 291 P. (2d) 414 (1955).

 An essential of actionable negligence is the breach of a duty to the person injured. *Lewis v. Scott,* 54 Wn. (2d) 851, 341 P. (2d) 488 (1959). The duty to use care to avoid injury to others arises from the foreseeability of the risk created. *Leek v. Tacoma Baseball Club,* 38 Wn. (2d) 362, 229 P. (2d) 329 (1951); *Burr v. Clark,* 30 Wn. (2d) 149, 190 P. (2d) 769 (1948). It follows that, if the conduct of the actor does not involve an unreasonable risk of harm to the person injured, he owes no duty to that person and, therefore, there is no actionable negligence.

Could Nevitt reasonably have foreseen that backing his automobile involved a risk of injury to Rodney?

*LaMoreaux v. Fosket,* 45 Wn. (2d) 249, 273 P. (2d) 795 (1954), is similar to the instant case. In the cited case, the defendant called at the home of Jess Neeley, one of his parishioners. He parked his automobile in front of the house and walked around to the side where the Neeleys' daughter, Mrs. LaMoreaux, was hanging clothing on a clothesline. Mrs. LaMoreaux's daughter, Christie Lou, eleven months old, was playing near her mother in the yard. The defendant talked with Mrs. LaMoreaux for about ten minutes and then returned to his automobile. As he was backing his automobile, he ran over Christie Lou. The LaMoreauxs brought an action to recover for the injuries to their daughter. The trial court directed a verdict for the defendant at the close of all of the evidence.

 We stated the applicable rules of law as follows [p. 255]:

"In order to affirm the trial court, we must hold, as a matter of law, that respondent was not negligent; or, to put it another way, that there was no evidence upon which the jury could find negligence on his part.

"The driver of an automobile is bound to exercise ordinary, reasonable, or due care towards a child in the operation of his car, taking into consideration the age, maturity, and intelligence of such child. 'Ordinary care' means that degree of care which a man of ordinary prudence would exercise under the particular circumstances. He is not an insurer against injuries to children from the operation of the car.

"Each case must be governed by its own peculiar facts. The test in each case is, did the defendant, realizing the

proclivities of children, and in particular, the age, maturity, and intelligence of the child involved, act in a reasonably prudent manner under the circumstances? 5 Am. Jur. 607, Automobiles, § 185. The generally accepted rule is:

" 'If a driver has reason to anticipate that a child might be near his automobile, it is his duty to see that the way is clear before starting the vehicle into motion, but, if he has no reason to anticipate the presence of children near his car, negligence cannot be predicated on the mere fact that he started his machine, injuring the child.' 2A Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) 440, § 1509 "

In holding that, under the circumstances presented, the defendant could not reasonably have anticipated the presence of the child under his automobile and that he, therefore, owed no duty to her, we stated [p. 259]:

" . . . Should he, under the circumstances surrounding this particular occasion, have been on the lookout for the child? We know now that if he had done so, the accident would not have happened. But, should he have had reason to anticipate that such a thing might happen? During the time that he was talking to Mrs. LaMoreaux, the child was playing back and forth in the area between the garage and the clothesline. She was always in the immediate vicinity of her mother. Rev. Fosket had never particularly made over her. She had never shown any particular adoration for him. He had no reason to believe that she would follow him. He testified: 'I just couldn't feature the fact of a year old baby following me that fast and getting out to the car . . . if that is what she did, and evidently she did. I didn't have no occasion to think the baby would follow me.' He had no actual knowledge of the child's position at or near his car. He had no reason to anticipate that she would be there. Under the facts and surrounding circumstances, he used all of the care that could have been expected of an ordinarily reasonable and prudent person. There was no evidence of negligence on his part that could have been considered by the jury."

In the instant case, Nevitt had last seen Rodney inside the house under the supervision and care of at least two members of his family. Lillian was seated on the front porch. Philip, Ricky, and Paul were playing ball in the yard. Barbara and Billy were standing beside the automo-

bile. All of the children who were outside the house had a view of the area around the automobile, yet none of them saw or heard Rodney place himself in the position of danger.

In this regard, the following statement from *Comer v. Travelers Ins. Co.*, 213 La. 176, 34 So. (2d) 511 (1948), quoted with approval in *LaMoreaux v. Fosket, supra*, p. 258, is apropos:

" ' . . . for under the circumstances, having last seen the child on the porch with his daughter, an adult of responsible age, in a place of safety, Rev. Dykes was justified in assuming, as a reasonable man, that if the child's position was changed to a more perilous one, he would be warned by his daughter, and that since he had not been so warned it was safe for him to back up.' "

Respondent Nevitt knew that Rodney could crawl; he did not know that he could walk. He knew that Rodney was in the house when he left to go to his automobile. He knew the other small children were playing in the yard, and that six of Rodney's brothers and sisters were in a position to see the area around the automobile and warn him if anyone moved into a position of danger behind his automobile.

■ Under these circumstances, we hold that respondent could not reasonably have anticipated that, in the interval of ten or fifteen minutes when he was talking with Barbara and Billy (during which time the motor of his automobile was running), Rodney would crawl out of the house through the back door, forty-five to sixty feet away, while Barbara and Billy, aged twelve and eleven years respectively, were standing beside respondent's automobile, and crawl into a position of peril unnoticed.

The judgment is affirmed.

WEAVER, C. J., MALLERY, HILL, DONWORTH, and ROSELLINI, JJ., concur.

FINLEY, J. (dissenting)—As I understand it, the conclusion reached herein by the majority is that respondent had no duty to check the area immediately behind his

automobile prior to backing it up, because he had no reason to anticipate the presence of the child Rodney (now deceased) in that area.

I am not convinced that the evidence in the record inevitably supports this factual conclusion. However, assuming the contrary, solely for the purpose of argument, I am convinced that under the overall circumstances presented by this case, it is beside the point whether or not respondent had reason to anticipate the presence of the *particular child*, whose death respondent unquestionably caused.

The record contains ample evidence that respondent had reason to anticipate the presence of some young child, playing in the driveway immediately behind his car. At the time respondent left appellants' house and entered the car, he saw Philip, Rickey and Paul Rose (age five, four, and three years, respectively,) playing ball on the lawn near the car. Respondent was a frequent visitor to the Rose home, and he knew that the younger children liked to play in the mud puddles which sometimes formed in the driveway on rainy days. Although it was not raining at the time of the accident, the record reveals that it had rained earlier in the day. By his own testimony, respondent admitted that he was aware of the danger of backing out of the driveway without first checking behind the car. In fact, he testified that he had made such a careful check before entering the car. Unfortunately, after having been seated in the car for about ten minutes while conversing with Barbara and Billy Rose, respondent failed to repeat his earlier examination of the area behind the car before putting it in motion.

It seems to me that the factor of a reasonable anticipation of the presence of some small child in the zone of danger renders the instant case clearly distinguishable from *LaMoreaux v. Fosket* (1954), 45 Wn. (2d) 249, 273 P. (2d) 795. In other words, the crucial point is that in the *La-Moreaux* case the defendant had no reason to anticipate the presence of *any* child in the immediate vicinity of his car. I suggest the majority's reliance upon the *LaMoreaux* case is at best extremely dubious.

I have no quarrel with the basic principle stated in the majority opinion: that "An essential of actionable negligence is the breach of a duty to the person injured." Nor do I dispute the refined application of the foregoing principle: that "The duty to use care to avoid injury to others arises from the foreseeability of the risk created." This latter concept was eloquently annunciated by Cardozo, J., in the famous case of *Palsgraaf v. Long Island R. Co.* (1928), 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253. Therein the defendant was held not liable for injuries sustained by a plaintiff who was not situated within the *apparent* zone of danger created by the defendant's careless conduct.

The factor which, in my judgment, distinguishes the *Palsgraaf* case from the instant case is simply this: In *Palsgraaf* the defendant had no reason to anticipate that the harmful consequences of his careless conduct (causing a passenger, attempting to board a railroad car, to drop an apparently inoffensive parcel, which, in fact, contained fireworks) would reach out and encompass the relatively distant area occupied by the plaintiff. Hence, the defendant owed no duty of reasonable care to such a plaintiff for the reason that the plaintiff was not within the foreseeable zone of danger created by the defendant's conduct.

In the instant case, however, the harmful consequences of respondent's conduct encompassed Rodney, without expansion beyond foreseeable bounds. Rodney, the minor child, entered into the physical area within which, according to substantial evidence in the record, respondent had reason to anticipate the presence of young children toward whom his act of putting his automobile into operation was foreseeably dangerous. In other words, as I see the matter, Rodney entered into a foreseeable zone of danger, and thus became a member of a class of persons (young children whose presence in the area immediately behind the car was to be reasonably anticipated) as to whom respondent owed a duty of reasonable care.

The rule of law which I believe to be applicable to the instant case was well stated by the Supreme Judicial Court of Massachusetts in *Newlin v. New England Tel. &*

*Tel. Co.* (1944), 316 Mass. 234, 54 N. E. (2d) 929, 155 A. L. R. 204, as follows:

"While it is settled that, if the defendant owed no duty of care to the plaintiff upon the facts alleged as argued by the defendant, there could be no actionable negligence on its part, *Theriault v. Pierce,* 307 Mass. 532, 533; *Little v. Lynn & Marblehead Real Estate Co.* 301 Mass. 156, yet it is also settled that the *possibility of harm to a class of which a plaintiff is one* raises a duty to abstain from conduct from which harm may result, . . ." (Italics mine.)

That is to say: an act is negligent, and furnishes the foundation for an action in tort, if the actor should reasonably foresee that his act would result in injury to someone —it not being necessary that the "someone" should be the person actually injured. *Wilson v. Northern Pac. R. Co.* (1915), 30 N. D. 456, 153 N. W. 429; see, also, *Lee v. Independent Dairy* (1923), 127 Wash. 622, 221 Pac. 309. Perhaps this point can be clarified and underlined by a reference to our "attractive nuisance" cases. The leading Washington case of this category is *Schock v. Ringling Bros. Etc.* (1940), 5 Wn. (2d) 599, 105 P. (2d) 838. Therein the "attractive nuisance" doctrine was expressed as follows:

" . . . One who maintains or creates upon his premises, or upon the premises of another, or in any public place, an instrumentality or condition which may reasonably be expected to attract children of tender years, and to constitute a danger to them, is under a duty to take the precautions that a reasonably prudent person would take, under similar circumstances, to prevent injury to such children."

One of the several factual elements or considerations emphasized by the court with respect to the applicability of the doctrine is that

" . . . the instrumentality or condition must have been left unguarded and exposed at a place where children of tender years are accustomed to resort, *or where it is reasonably to be expected that they will resort,* . . ." (Italics mine.)

Certainly it is not necessary under the so-called "attractive nuisance" doctrine that the plaintiff prove that the

defendant had reason to expect the presence of the particular child who was actually injured. It is enough, in order to establish a duty of reasonable care, that the plaintiff show that the defendant had reason to anticipate the presence of that class of persons, namely, young children, to which the injured child belongs.

For the reasons hereinbefore set forth, I believe that the trial court erred in granting respondent's motion for a nonsuit and in entering judgment dismissing appellants' action. Consequently, I dissent.

FOSTER, and HUNTER, JJ., concur with FINLEY, J.

November 30, 1960. Petition for rehearing denied.

