CHASEZ, Judge.
This is an action in tort by Mrs. James Davis and James Davis, plaintiffs, seeking the recovery of damages for the death of their twenty-one month old boy, Jerry Lee Davis. Defendants are Larry Guillot, employer of the truck driver who accidentally ran over the child, and his insurer Houston Fire & Casualty Company. After a trial on the merits, a judgment was rendered in favor of the defendants. From this judgment plaintiffs have appealed.
On September 28, 1960, at approximately 4:15 P.M., Jerry Lee Davis, a child of 21 months, was killed by a beverage truck owned by Larry Guillot, doing business as Westwego Beverage Service, and operated by Wilton Grabert, Jr., his employee. The accident occurred on Tenth Street between Avenue A and Avenue B in West-wego, Louisiana. As will be discussed later, Grabert was apparently backing the truck towards the warehouse owned by Larry Guillot when the fatal accident occurred. The accident happened at a point near the edge of Tenth Street directly in front of the steps of the Davis home and diagonally across the street from the defendant’s warehouse. The District Judge states that these steps are approximately seven to ten feet from the black-top street, and the area between the house and the street is level and covered mostly with shells. Death was caused by the right-rear dual wheels of the truck running over the child.
*921 The series of events immediately preceding the accident is somewhat disputed, but attorneys for both parties generally agree with the following explanation: On the day of the accident the beverage truck whs pulled out of the warehouse where it was kept and parked on the opposite side of Tenth Street on the black-top pavement adjacent to an open ditch. The truck remained parked there just beyond the property line of the Davis house while a pick-up truck was being loaded with merchandise for delivery in the course of defendant’s business. When that delivery was completed, Guillot directed his employee, Grabert, to put the beverage truck back into the warehouse. At this time another employee, Charles Alleman, was standing in the doorway of the warehouse and Guillot was in the pickup truck parked in the street facing Avenue A. After Grabert had climbed in the beverage truck, Guillot drove the pickup truck around the corner and Alleman turned to walk inside the warehouse. As Grabert was in the process of backing the beverage truck, the fatal accident occurred.
The sole issue before the court is whether the driver knew, or should have known, of children in the area and therefore be held to the high degree of care required by our law. A review of the evidence is necessary to determine whether the driver, Grabert was negligent in this backing operation.
Counsel for plaintiff bases his entire case on the argument that the child must have been playing outside the house immediately prior to the accident, and had Grabert exercised the necessary care, he could have avoided the accident. Had Grabert seen the child in the yard, he would be negligent in failing to take precautions against its unpredictable behavior. In the alternative, Gra-bert could be charged with constructive knowledge of the child’s presence, if he was actually outside the house as Grabert approached the truck.
We agree with the district judge that a careful analysis of the evidence does not lead to the conclusion that Grabert was negligent. The child could not have been in the area around the truck so that its operator might have had an opportunity to observe its presence before backing. Grabert testified that when he walked from the warehouse to the truck he had a clear and unobstructed view of the Davis house and the area in which the truck was parked. He testified that there were no children near the truck nor in the area, in which he would be backing. Charles Alleman, who was standing in the doorway of the warehouse, also had a clear view of the area until the time Grabert reached the cab of the truck. He saw no children in the area and turned to walk to the rear of the warehouse. He heard the motor start after he turned, and had walked only a short distance when the accident occurred. At the time Alleman was standing in the doorway, Guillot was in the pick-up truck waiting to drive around the corner. He too testified that he saw no one around the truck just prior to its backing up. He signalled for Grabert to come back and then drove around the corner.
The only eye-witness to the accident was eleven year old Sheryl Ardoin. Her statement, taken by deposition, revealed that she had been in the Davis house just prior to the accident and she had seen the child in the kitchen. She then walked across the street to her house, went inside, and upon returning to her front porch she saw the child. She described the actions of the child as “scooting” down the steps and then moving toward her, as babies do, into the path of the truck. She was unable to do anything but call, “Jerry, get back.” This sequence of events as described by Sheryl Ardoin is corroborated by Mrs. Davis’ statement that Jerry Lee was in the house with her just before the accident. She was in the house folding clothes while she thought Jerry Lee was in another room. In the time it took her to fold only three or four towels he had somehow gotten out of sight and into the street where the accident occurred.
*922 We agree with the trial judge that a careful analysis of the foregoing testimony establishes the most probable time interval and sequence of events to prove that the child was not outside the house as Grabert approached the truck. The only conclusion that we can draw is that after Grabert had entered the truck the child came out of house, down the steps and into the path of the truck. We do not know exactly how this 21 month old child got behind the wheels, but it is reasonable to believe that he could scoot down the steps, travel a distance of seven to ten feet from the steps in the same time it took to put the truck in gear and slowly back eleven feet.
Mrs. Margaret Kiraly, the only witness who reported she had seen the child outside the house, was working in her yard some one hundred feet away. She stated she saw the child playing in the shells some time prior to the accident. The interval between the timé she saw the child and the accident is not clear, but taken along with the other testimony, we are led to conclude it was approximately one-half hour prior to the accident. We agree with the trial judge that had she seen the child at that time, it would not confirm that he was there when Grabert walked to the truck. Thus the preponderance of the evidence serves to establish that no child was near the truck just prior to the accident.
Louisiana courts have adopted the general rule taken from Blashfield’s Cyclopedia of Automobile Law and Practice, Vol.2A, § 1509:
“ ‘If a driver has reason to anticipate that a child might be near his automobile, it is his duty to see that the way is clear before starting the vehicle into motion, but, if he has no reason to anticipate the presence of children near his car, negligence cannot be predicated on the mere fact that he started his machine, injuring the child.’ 2 Blash-field’s Cyclopedia of Automobile Law and Practice, § 1509.”
Comer v. Travelers Ins. Co., 213 La. 176, 34 So.2d 511, 512.
The case of Layfield v. Bourgeois, La.App., 142 So.2d 799 is concerned with a child darting into the street, but the explanation of the above rule is applicable under the circumstances of this case.
At page 801 the court stated:
“[1-3] There is no dispute as to the law, it being well established in our jurisprudence that a motorist who sees or should see children near the roadside, must exercise a high degree of care in view of the propensity of young children to dart or run into the street, heedless of their own safety. This rule implies that when a motorist sees or should see a child near the roadside, he must anticipate that the child might suddenly dart into the street. Consequently, the motorist must bring his vehicle under such control that he can avoid injuring the child, notwithstanding its youthful indiscretion. Stamps v. Henderson, La.App., 25 So.2d 305; Hughes et al. v. Gill, La.App., 41 So.2d 536; Guillory v. Lemoine, La.App., 87 So.2d 798. On the other hand, a motorist is not an insurer of the safety of children playing near the street. If the motorist is proceeding at a lawful and reasonable speed and obeying all of the rules of the road as to proper lookout etc. he will not be held liable where a child suddenly darts or runs into his path from a concealed position in such a manner that the motorist is unable to avoid striking the child. 2 Blashfield’s Cyclopedia of Automobile Law and Practice (Permanent Edition) page 532, Sec. 1498; * * *”
Larry Güillot cannot be held ultimately responsible for his employee’s actions in this instance. His driver, Grabert, had an unobstructed view of the whole area as he approached the truck, and he unequivocally stated there were no children in the vicinity. He then mounted the truck, checked the rear-view mirrors, put the *923 truck in gear, and checked the mirrors again before backing. At no time during this procedure were any children in sight. This is confirmed by Guillot who observed the area shortly beforehand and Alleman, who was specifically watching for children, until the time Grabert got into the truck. Thus, we must conclude that the necessary precautions were taken in the process of backing this vehicle. The child must have come from a concealed position in the house and “scooted” towards the street, as only a twenty-one month old baby can, while the truck was put in reverse and backed toward the warehouse. We cannot conclude that Grabert saw the child nor can he be charged with this knowledge under the circumstances of this case.
In discussing the possibility of negligence on behalf of the driver, Grabert, we are aware of the similarity to Cook v. Scarborough, La.App., 72 So.2d 560. In that case a fourteen month old child was killed when she left a place of safety and somehow got in the path of a slowly moving truck. The driver knew of the presence of the children and had placed them together so as to be clear of the intended path of the truck. The driver then got into his truck, checked the rear-view mirror, and upon seeing the group of children together, proceeded slowly forward. In holding the driver free from negligence, the court made the following statement on page 562:
“We cannot conceive what purpose would have been served by an examination of the right side of the truck by its driver, the defendant Scarborough, when all of the children, and specifically the unfortunate little Connie Sue Cook, were in a place of safety at the rear of the truck. How the little child reached the position of danger which resulted in her death is not established, for Adolphus Snell testified quite frankly that he did not see her move around to the right side of the standing vehicle. But we do know from the testimony, beyond any possible question, that the child must have moved in the slight interval of time between Scarborough’s observation in the rear view mirror and the starting of the motor and the beginning of the forward motion of the truck. According to the testimony of the mother, although the child was only fourteen months of age she had been walking since the age of seven months.
“As we have tried to point out, the only ground for a finding of negligence on the part of Scarborough lies in the charge that he failed to walk around the right side of the truck before entering the cab and starting the vehicle forward. Clearly this would have been a vain, futile and useless act.”
From all the evidence adduced in this record we are constrained to conclude that Grabert, the operator of the truck, was not guilty of negligence either by acts of omission or commission. The employees of the defendant took all normal precautions in order to avoid accidents of this nature and they should not be held liable because the presence of this child was not ascertained. We must likewise conclude that the plaintiffs have failed to carry the burden of proof necessary to establish that the defendant or his agents should have discovered the presence of the child and that they failed to fulfill the degree of care owed to him under the existing circumstances. As herein stated, the evidence does not sustain the finding of fact that the child was outside the house when Grabert approached the truck and entered it, nor does the evidence warrant the conclusion that the presence of the child could reasonably have been discovered after Grabert entered the truck to move it.
Consequently the appellate court should not reverse the trial court’s finding of fact where no manifest error exists. In the instant case, we find the trial court’s analysis of the evidence and finding of facts to be well reasoned and correct.
Therefore the judgment of the court a qua in favor of the defendants, Larry Guil- *924 lot, doing business as Westwego Beverage Service and Houston Fire and Casualty-Company, dismissing the suit of plaintiffs, Mrs. James Davis and James Davis, is affirmed. All costs shall be borne by plaintiffs.
Affirmed.