The plaintiff was injured a short distance south of Independence, in Tangipahoa Parish, when she fell from an ambulance while accompanying her sick daughter from the State Hospital at Independence to a hospital in New Orleans. The ambulance from which she fell or was thrown belonged to the State, or the Department of Public Welfare, and was operated for the use of the Florida Parishes Hospital in transporting charity patients treated at that institution. At the time of the accident, this ambulance was being driven by Raymond Colwet, a regular employee of the Hospital, whose duties were to transport patients to and from this Hospital. The Employers' Liability Assurance Corporation, Ltd., carried public liability insurance on the ambulance. *Page 662 
The plaintiff sued the State, the State Department of Public Welfare, the State Board of the Department of Public Welfare, Raymond Colwet and the above named insurance company, for damages in the sum of $3,574.27. The suit was dismissed as to the State and its Departments on exceptions, and as no appeal has been taken from this judgment of dismissal, the State and its Departments are no longer parties to the suit. The insurance company and Colwet also filed exceptions which were overruled, and they then filed answer. After a trial, a judgment was rendered by the district court in favor of these two remaining defendants, dismissing plaintiff's suit, from which judgment she has appealed.
The allegations of the petition may be summarized as follows: That plaintiff's daughter, Mrs. Lamonte, was taken to the Hospital at Independence in a serious condition around 2 o'clock in the morning of March 10, 1940, and the physicians in charge deemed it advisable to send the patient to New Orleans at once; that the patient was put in the Hospital ambulance around 4 o'clock that morning for the purpose of taking her to a hospital in New Orleans, the patient being put on a cot or stretcher in the ambulance; that the driver of the ambulance invited plaintiff, the mother of the patient, the patient's husband and brother, to accompany the patient; that the driver assisted the three relatives to enter the ambulance and closed the door, but did not assign them to any seats in the ambulance; that the driver, Colwet, then put the ambulance in motion and began his trip, negligently failing to ascertain how his passengers were seated, or to provide adequate and proper seats for them, and failing to see that all doors were securely fastened and closed; that plaintiff, being the first to enter, seated herself on a seat or stool near the front of the ambulance so arranged that she could converse with the patient on the stretcher; that after beginning his journey, the driver drove the ambulance along the highway at a speed of approximately 60 miles per hour, and when the ambulance had reached a point near Natalbany, a door located near the right front section of the ambulance opened, and, without any fault or action on the part of plaintiff in causing the door to open, the existence of which door was unknown to her, she was violently thrown out of the ambulance onto the pavement, where she sustained the injuries for which the suit is brought.
One of the exceptions filed by the insurance company and Colwet in the lower court, and re-urged in this court, was that of no cause or right of action. Without going into a lengthy discussion of this exception, we think the trial judge was correct in overruling it. From the above summarized allegations of the petition, it will be seen that one of the grounds of negligence charged to the driver of the ambulance was his failure to properly close the doors of the ambulance. As plaintiff was injured when the door of the ambulance flew open and she fell out and was precipitated to the pavement, the fact that the driver failed to properly close and secure this door (if such was a fact) could have been a proximate cause of the accident. In any event, we think the allegations of the petition, taken as a whole, were sufficient to admit proof in support thereof.
The defendants admit taking plaintiff's daughter as a patient to be transported to New Orleans, and admit that plaintiff fell out of the ambulance and received some injuries, but they deny that the driver invited plaintiff and the other two relatives of the patient to ride in the ambulance. They aver that plaintiff and the other two relatives requested and were granted permission to ride in the ambulance with the patient; that the driver properly closed the door of the ambulance after the passengers had gotten in and were seated; that the ambulance and all of its parts were in good mechanical condition, so far as they knew, and they do not know in what manner or from what cause the plaintiff fell from the ambulance, but they deny that the driver was guilty of any negligence. In the alternative, defendants plead contributory negligence on the part of plaintiff in certain respects which we deem unnecessary to detail in view of the conclusion we have reached.
The first matter to be decided is the exact relationship which Mrs. Morales, the plaintiff, bore to the driver of the ambulance. The testimony indicates that several members of the family of the sick person who was to be carried to New Orleans in the ambulance were present at the time the ambulance left the hospital at Independence. Some of these relatives were anxious to go along with the *Page 663 
patient, and one of the doctors in the hospital requested the driver of the ambulance to let three of them go along as possible blood donors. The plaintiff and the other two relatives got in the ambulance after the patient had been placed therein on a cot or stretcher.
Under these circumstances, the plaintiff was a gratuitous passenger and sustained the relationship of a guest, whether she was invited by the driver to ride or whether she requested the privilege of riding in the ambulance and was granted the privilege of doing so by either the driver or the doctor having charge of the patient. There is no distinction made under the law between one who requests the privilege of riding as a gratuitous passenger and is granted that privilege and the one who is invited to ride by the owner or operator of the car and accepts the invitation. In either case, such a person is a gratuitous guest to whom the driver of the car owes the same duty. See Provosty v. Christy et al., La.App., 152 So. 784; Chanson v. Morgan's L. T.R.R. S.S. Co. et al., 18 La.App. 602,136 So. 647.
As the plaintiff sustained the legal relation to the ambulance driver of guest or gratuitous passenger, the next question to consider is the degree of care required of the ambulance driver for the safety and protection of the plaintiff on this trip as such a guest or passenger. The duty imposed on the driver toward such a passenger is stated in Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., Vol. 4, p. 92 et seq., § 2311. As there stated, the driver is not bound to exercise the highest practicable degree of care as is a common carrier, nor is he to be held liable as an insurer, but is only held to the exercise of the ordinary care of a reasonably prudent man in the management and operation of the automobile. The guest is entitled to rely on the driver in using ordinary and reasonable care for his safety, and any act of negligence or fault on the part of the driver which causes injury to such a gratuitous guest or passenger gives rise to an action of damages under the general tort law of this state. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253. For a very clear and persuasive statement of the law on these two points by the Supreme Court of Mississippi, see the case of Green v. Maddox, 168 Miss. 171,149 So. 882, 151 So. 160.
The ambulance had a door in the rear through which patients were put into the ambulance and there was a door, similar to the regular door of a passenger automobile, on each side of the ambulance through which passengers could enter. On the inside, to the right of the stretcher on which the patient lay, there were two folding seats. The plaintiff and her son-in-law both sat on the seat toward the front near the patient, the plaintiff sitting on the outside, or the side against the right frame of the ambulance and just to the rear of the side door out of which she fell. The other relative sat in the seat just to the rear of plaintiff and her son-in-law.
These passengers, who were riding in the ambulance in the positions above stated, testified that plaintiff did not press against or touch the side door; that she did not move in her position from where she was sitting a few inches back of the post to which the door was hinged and from which it was made to swing to the rear when opened. None of them could give any account of how or why the door came open, stating that they did not even know a door was there. While the evidence does show that plaintiff was "squeezed" in between her son-in-law and the side of the ambulance, yet if her position was back of the door, it could hardly be presumed that she pressed against the door and caused it to fly open. Plaintiff insists that she did not touch or manipulate the handle on the door as she would have had to lean forward to do so.
Plaintiff contends that she is entitled to invoke the doctrine of res ipsa loquitur in support of her action. Conceding that it was incumbent on plaintiff to allege and prove some fault or act of negligence on the part of the driver of the ambulance, she has shown by a preponderance of the evidence that the door of the ambulance flew open from no act or fault of hers, but she is unable to prove the exact cause of the door flying open as it did. As it is shown that such a door will not fly open when it is properly closed and locked and when the vehicle is being driven in a proper manner, the presumption arises that the door flew open because of some defect in the lock, failure to properly close the door, or the negligent operation of the ambulance. It then devolved on the defendants to give an explanation as to why the door flew open, or else show that the driver was not guilty of any *Page 664 
negligence that was a proximate cause of the door flying open as it did. Monroe v. D'Aunoy, La.App., 143 So. 716.
As the testimony does not show that the door flew open on account of any act on the part of plaintiff, it then becomes necessary to determine whether or not the driver has given a proper explanation of how the accident happened, or has shown that his acts were those of an ordinarily prudent man under the circumstances. This we think he has done. The evidence is overwhelmingly to the effect that there was nothing wrong with the lock on the door of the ambulance; that the ambulance and the doors were frequently and periodically examined by a mechanic before the accident; that the door would lock in the usual and normal way when closed. The driver of the ambulance testified that when he had put the patient in the ambulance, and the three passengers had gotten in through the right side door, he closed this door as well as the back door. While the plaintiff and the other two passengers insist that they got in through the rear door, yet in our opinion this point is not so material as they all agree that the right side door which flew open was closed and remained closed until it flew open at the point of the accident some six or seven miles below Independence. There is nothing to show that this right door was only partly closed, as otherwise it would have rattled and attracted the attention of the passengers, which was not the case. The fact that these passengers claimed that they did not even know that a door was there indicates that the door was securely closed.
The driver has shown that he used ordinary and reasonable diligence in getting these three passengers in the ambulance and in seeing that the doors were closed. While there are only two seats in the ambulance, the driver was under no obligation to provide an additional seat, and the passengers had a better opportunity than the driver of adjusting themselves to the seats provided and the conditions under which they would ride. The driver could not attend to his duties in driving the ambulance while in the cab and at the same time take care of these three passengers in the rear of the ambulance who were fully capable of taking care of themselves. It is not shown that the speed of the ambulance was excessive or that the driver was guilty of any negligence in swerving or jerking the ambulance in such a way as to cause the door to fly open. The road was smooth and straight, and there was nothing in the speed or manner of driving to indicate that the driver was not exercising ordinary and reasonable care. He was not required to exercise extraordinary care, nor was he bound to insure the safety of plaintiff.
We do not think the alleged facts in the case of Rushing v. Mulhearn Funeral Home, Inc., et al., La.App., 200 So. 52, are sufficiently similar to the proven facts in the present case to make it very appropriate. In that case, the facts as alleged showed that the door of the ambulance through which plaintiff fell out flew open because of the pressure on the door by the plaintiff, or because of the plaintiff's act in opening a window just in front of the door which caused a strong air current to get into the ambulance and blow open the door while the ambulance was traveling at a high rate of speed. Neither do we think the two cases cited and relied on by plaintiff of Richardson v. Portland Trackless Car Co., 113 Or. 544, 233 P. 540, and McCormick v. Index Stages, Inc., 137 Wn. 507, 242 P. 1090, have any direct relevancy to the present case. Those cases involved pay passengers and, of course, a high degree of care on the part of the drivers of the busses from which they fell. Moreover, in both those cases, there were specific acts of negligence shown on the part of the bus drivers. In one case, the bus gave a lurch or jerk in passing over a low place in the road which caused a door to fly open and the passenger to be thrown out and injured; and, in the other case, the door flew open when the bus was rounding a sharp curve, the centrifugal force causing the door to fly open and the plaintiff to be thrown out. The court held that these facts justified the jury in determining whether or not there was negligence on the part of the bus driver.
Finding no error in the judgment appealed from, the same is hereby affirmed.
DORE and OTT, JJ., concur.
LE BLANC, J., not participating. *Page 665