DOMENGEAUX, Judge.
Mr. and Mrs. Maxey W. Murray instituted this suit for damages for the death of their 11 year old daughter, Teresa Renee Murray, who fell out of a Volkswagen bus and thereafter was struck by an automobile being driven by Cecil Edwards. The defendants are Volkswagen Mid-America, Inc.; Allstate Insurance Company (insurer of Rev. Joseph Sharp) ; Dixie Automobile Insurance Company (insurer of Mrs. Sandra Simpson); Lester Edwards (father of the minor, Cecil Edwards) ; and State Farm Mutual Automobile Insurance Company (insurer of Edwards) .
Prior to trial the suit was dismissed as to Volkswagen Mid-America, Inc. Judgment on the merits was rendered by the trial court in favor of the remaining defendants. Plaintiffs have appealed.
The questions presented are: (1) Was the owner of the Volkswagen bus negligent in allowing children to be transported in it? (2) Was the driver of that bus negligent? (3) Was the driver of the automobile which struck and fatally injured plaintiffs’ daughter negligent?
The accident occurred at about 9:50 P. M. on September 10, 1971, at the intersection of Louisiana Highway 1 and Dixie Lane, an inferior street, near Alexandria. Immediately prior to that time, plaintiffs’ daughter, Teresa, was riding in a Volkswagen bus owned by Rev. Joseph Sharp and being driven east on Dixie Lane by Mrs. Sandra Simpson. Teresa fell out of the bus on the highway shortly after the bus had entered the above intersection, and while the driver was attempting to turn to her left, or north, on the highway. A few moments after she fell, the child was struck by an automobile owned by James M. Bruninekx and being driven by Cecil Edwards, a minor. She sustained injuries as a result of that accident, which caused her death shortly after it occurred.
In the late afternoon and on the aforementioned date Mrs. Simpson went to the *239 Air Base Road Baptist Church in Alexandria, Louisiana, to transport six or seven girls from the church to a church party which was being given at the home of Mrs. Shirley DeSoto, on Dixie Lane, in Alexandria. A 1962 Volkswagen bus owned by Rev. Joseph Sharp, pastor of the above mentioned church, was used to transport these children. Mrs. Simpson and the children, all of whom were about 11 years of age, boarded the bus at the church, and Mrs. Simpson drove it safely and without incident to the DeSoto home on Dixie Lane. The vehicle was being driven with the full knowledge and consent of the owner, Mr. Sharp.
There were three doors on the right side of the Volkswagen bus. The front door was located above the right front wheel, and there were no defects in that door. The middle door and the rear door of the bus were located almost in the center of the right hand side of the vehicle. The hinges of the middle door were located .toward the front of the bus, and the hinges on the rear door were located toward the rear. There was no post between these two doors, and when both doors were open a large opening was formed on the side of the bus, facilitating the loading or unloading of that vehicle.
The rear door was equipped with only one handle, located on the inside of the bus. When the rear door of the bus was closed and the handle turned to the locked position, a mechanism inside the door caused metal locking pins or rods at the top and bottom of the door to move so that the ends of those rods became inserted into holes or recessed areas in the top and bottom of the body of the bus. These metal pins, when properly moved into this locked position, held the rear door securely closed until the door was unlocked by turning the handle of that door inside the bus. There were no defects in the locking mechanism of the rear door of the bus involved in this accident.
The middle door of the bus was equipped originally with two handles, one on the inside and the other on the outside of that door. It also was equipped with metal pins or rods at the top and bottom of the door, which were designed to move when either handle was turned and to lock that door as did the pins in the rear door. In addition to these pins, however, the middle door was also equipped with a spring lock, or a latch or bolt, located on the outside edge of the door, about midway between the top and bottom of it, and this spring lock was designed to latch or secure the middle door automatically when that door was closed, or slammed shut. There was a recessed place, sometimes called a “striker plate”, in the front edge of the rear door, and that plate served as a part of the locking mechanism of the middle door. When the middle door was closed, the plunger or bolt in the spring lock would strike the striker plate, causing the bolt to be pushed back momentarily and then to slip into the hole or recessed part of the striker plate, thus latching or holding the door in its closed position. The turning of the inside or the outside handles of the middle door ordinarily would cause the metal pins as well as the spring latch to retreat, and thus allow the door to be opened.
On the bus involved in this accident both of the handles on the middle door were missing, and it thus was impossible to activate the locking pins or rods on that door, without using a screw driver or some other tool for that purpose. No such tool was used on the day this accident occurred, so the only operating mechanism which served to keep the middle door closed was the above described spring latch or spring lock on that door. In order to close the middle and rear doors of this bus, it was necessary first to close and lock the rear door by activating the locking pins, and then to close the middle door by slamming it or by using a knife or some other thin object to hold the spring plunger or bolt in until the door was closed.
Rev. Sharp and Mrs. Simpson were present when the children were loaded into the bus at the church. Mr. Sharp was *240 aware of the defect in the locking mechanism of the middle door of the bus, and at that time he cautioned Mrs. Simpson in general about checking the doors to see that they were closed before moving the bus. He explained to her how to latch the doors, and particularly how to see that the locking pins in the rear door were properly positioned and how to get the spring latch engaged in the striker plate. Mrs. Simpson instructed the girls at the church to enter and leave the bus only by the front door, and directed them not to use the middle or rear doors at any time.
Teresa Murray was not at the church at the time the first group of girls entered the bus, so she did not receive the above mentioned instructions about the doors. Mrs. Simpson drove by the Murray home and picked Teresa up en route to the party.
Upon their arrival at the DeSoto home the children exited through all of the doors of the vehicle, despite the fact that they had been instructed not to use the middle and rear doors. Mrs. Simpson told the children again at that time to not use the rear and middle doors of the bus at any time, and Teresa was present when that instruction was given. After the children had gotten out of the bus at the DeSoto home, Mrs. Simpson proceeded to close and to lock the middle and rear doors of the bus as she had been instructed. She then left the DeSoto home in another vehicle to return to the church, but according to a prearranged plan she returned about the time the party was over for the purpose of driving the children back to their homes or to the church.
After Mrs. Simpson returned, the children re-entered the bus for the return trip. There is a conflict in the evidence as to whether the children opened the middle and rear doors to get back into the bus immediately prior to the return trip. In any event, after the children were all in the bus, Mrs. Simpson, with the assistance of Mrs. DeSoto, proceeded to again lock the middle and rear doors. They testified that it was necessary to use a butter knife at that time in order to close the middle door, but after the rear door had been locked by turning the handle, thereby engaging the pins or rods, and the middle door had been latched, they tested the doors by pulling on them and by having some of the children push on the doors from the inside.
Mrs. Simpson then proceeded to drive the bus from the DeSoto home eastward on Dixie Lane, a distance of only a few blocks, to the intersection of that lane with Louisiana Highway 1, a heavily traveled thoroughfare. No turns were necessary in driving the bus from the DeSoto home to the highway. When Mrs. Simpson reached the above intersection, she brought the bus to a stop, and after determining that it was safe for her to proceed, she thereupon caused the bus to enter the intersection and turn to its left. As it was turning to the left, both the middle and rear doors on the right side of the bus flew open, and Teresa Murray, who was seated nearest the middle door on the seat facing the rear of the bus, fell out of the vehicle onto the southbound lane of the highway. As soon as she fell out, some of the girls informed Mrs. Simpson of that fact, and the latter immediately drove the Volkswagen bus onto the right or east shoulder of the highway and brought it to a stop.
While the bus was negotiating this intersection, a line of three cars, all being driven south on Highway 1, were approaching the same intersection at a speed of about 40 or 45 miles per hour. The driver of the first car, Malcolm Miller, saw the child when he reached a point about 125 or 150 feet from her, and he caused his car to veer to the left and in that manner he avoided striking her. He brought his vehicle to a stop on the west shoulder of the highway a short distance south of the intersection.
The second car in this line of vehicles was being driven by Cecil Edwards, the minor son of Lester Edwards. The evidence convinces us that the driver was un *241 able to see the child until the Miller vehicle veered to its left, and that Edwards thus was much closer to the child when he first saw her than was Miller. Edwards testified that the Miller vehicle “swerved real, real fast and just barely missed it”, and that Edwards was only about two car lengths from the child when he first noted an object in his lane of traffic. He stated that he did not realize that it was a person on the road until after the accident, that he attempted to turn to his left but saw an automobile approaching in the opposite lane of traffic, and that he thereupon turned back to his right in an effort to go around the right side of the child, but was unable to avoid striking her. His statements to that effect are supported by the testimony of a passenger in the Edwards’ car.
The driver of the third vehicle, Allen Wayne Carter, stated that he saw the child as she was being run over by the Edwards’ vehicle. Carter was able to avoid striking Teresa by veering to his left.
Plaintiffs’ first contention is that Rev. Sharp was aware of the defect in the locking mechanism of the middle door of the bus, and that he was negligent in allowing the bus to be used to transport children while it was in that condition. They contend that he failed to warn plaintiffs or to tell their child, Teresa, of the defective condition of the door, and that his warning and instructions to Mrs. Simpson did not relieve him from liability to the plaintiffs. We think there is merit to this argument, as hereafter pointed out.
Following the relatively recent shift in analysis by our Supreme Court [from proximate cause language to the ambit of duty approach] on the question of negligence, [Jones v. Robbins, 289 So.2d 104 (La.1974); Weber v. Phoenix Assurance Co. of New York, 273 So.2d 30 (La. 1973); Laird v. Travelers Insurance Co., 263 La. 199, 267 So.2d 714 (1972); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1970); Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962)] our first inquiry is whether any causal relationship existed between the harm to Teresa and Rev. Sharp’s allegedly negligent conduct. Was the use of the bus, with a defective door system, to transport children a cause in fact of the accident?
It is clear that a defect existed in the locking mechanism of the bus doors and that the bus was not safe for transporting children. The nine-year-old vehicle, as shown by the photographs introduced into evidence, was in a poor condition. Prior to the accident it was used primarily for hauling building materials from place to place. In fact, it was during such use that the handles of the middle door were knocked off.
Herschel Williamson, the only expert called to testify on the mechanical aspects of the doors of the Volkswagen bus in question, testified explicitly that if the outside and inside handles of the middle door were removed (as they were in this case) it was not possible to close the door system securely. He stated that even if the spring latch was engaged, the middle door could be opened by a hard kick or blow at the bottom of the door. Williamson further testified if the rear door was properly secured[1] the only plausible explanation of both doors opening (as occurred in this case) would be if someone operated the handle of the rear door.
However, he further testified to the effect that if (a) the handles of the middle door had been intact and working properly, (b) the rear door was securely closed *242 (with locking rods in place) and (c) the middle door subsequently was properly closed, then it would have been impossible for the rear door to have been opened without first opening the middle door. The reason for this is that the middle door “laps” over the rear door.
Therefore, assuming arguendo, that the accident took place because of the operation of the inside handle of the rear door, the paramount factor is still: had not the locking mechanism of the middle door been defective in the first place, anyone could have turned the rear handle and the rear door would not have opened. In fact further testimony indicates that had all handles been in place, the only way for both doors to have opened concurrently would be if someone turned the inside handles on the rear and middle doors, thereby retracting the locking rods and disengaging the spring latch.
From the foregoing evidence it is not difficult for us to conclude that “but for” the defective locking mechanism the doors would not have both opened, thereby causing the accident. Likewise, the defect was a substantial factor in bringing about the harm and therefore a cause-in-fact of the accident.
As a result of the foregoing determination it must now be ascertained whether the defendant-owner breached a legal duty imposed to protect against the particular risk involved. The first question to be answered, then, is whether Rev. Sharp owed a duty to Teresa respecting the general type of harm incurred.
The plaintiff does not cite or rely upon a statute[2] for imposition of the alleged duty owed by the defendant-owner. Instead the basis is non-statutory and in this respect we quote from Hill v. Lundin & Associates, Inc., supra, 256 So.2d at p. 622-623.
“ . . . Where the rule of law is jurisprudential and the court is without the aid of legislative intent, the process of determining the risk encompassed within the rule of law is nevertheless similar. Malone, Ruminations on Dixie Drive It Yourself, 30 La.L.Rev. 363 (1970); McDonald, Proximate Cause in Louisiana, 16 La.L.Rev. 391 (1956). The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. ‘All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.’ Malone, Ruminations on Cause-In-Fact, 9 Stanford L. Rev. 60, 73 (1956).”
The defendant’s alleged misconduct, his alleged breach of duty, was in permitting the use of the van with known defective doors (which could not be securely and safely closed).
There is little question but that the door system on the van was defective and dangerous. The record is replete with evidence to the effect that the defendant-owner knew of the defect and was aware of the danger of the doors opening. He instructed the eighteen-year-old driver, Mrs. Sandra Simpson, how to engage the spring *243 latch and told her to recheck the doors to make sure they were closed before leaving.
We cannot, however, say simply that one who permits the use of his vehicle with a defective door locking mechanism is “negligent per se”. This terminology has been discarded in Weber v. Phoenix Assurance Co. of New York, supra. It is only that conduct which creates an appreciable range of risk for causing harm that is prohibited. See Hill v. Lundin & Associates, Inc., supra. Permitting the use of an automobile with defective door locking mechanisms under certain conditions may create an unreasonable risk of harm to others which would impose a reciprocal duty upon the defendant-owner. We are of the opinion such a case is present herein.
 Imposition of such a duty in the present case stems from the fact that defendant allowed his vehicle to be used to transport young children on the day in question. We feel he owed a higher degree of care or duty under the circumstances to the children than if he had been transporting adults. In addition under such circumstances he is to be charged with the knowledge that children of this age are often rowdy and playful and in view of the known faulty condition of the vehicle, the result occasioned could and should have been reasonably anticipated.
The remaining question is whether the risk of the doors of the bus suddenly opening and someone subsequently falling onto the highway is within the ambit of protection of a rule of law which would prohibit the use of a vehicle with defective door locking mechanisms. We think the answer to be clearly affirmative. It is surely reasonably foreseeable that if you transport young children in a van with defective doors which cannot be securely and safely closed there exists the risk of someone falling out. This in fact is the first risk which comes to mind.
In summary, the locking system of the middle and rear doors of defendant’s van was defective. Said defect was clearly a cause in fact of the accident. Rev. Sharp, without a question knew of the defect. We have further determined under the law, that defendant owed a duty to protect Teresa from the risk which gave rise to her fatal injuries. It was clearly foreseeable under the circumstances that a child of such tender age was in danger of falling out of 'the back of the van if the defective doors suddenly opened. Yet the defendant allowed the van to be used in face of such a danger without curing the defect or even warning Teresa of the danger. It is evident to us that he breached the duty owed. As a result plaintiff has established legal and actionable negligence on the part of Rev. Sharp.
Our finding of negligence on the part o~t Rev. Sharp would not differ under the “reasonable care under the circumstances” standard as proposed by the defendants’ briefs. The precautions taken were wholly inadequate. The defendants, however, argue that the instructions given by Rev. Sharp to the driver were adequate compliance with the duties owed to the passengers. We disagree. See Jackson v. Jones, 224 La. 403, 69 So.2d 729 (1953). The only instructions given Mrs. Simpson by Mr. Sharp had to do with engaging the spring latch and rechecking the doors. This notification did not in our opinion serve to exonerate the defendant-owner from liability for his negligence in allowing the bus with defective doors to be used to transport the children in this case and the resulting fatal injuries to Teresa.
By reason of the aforementioned holding we will also dispose of the question of possible contributory negligence on Teresa’s part. Once negligence is proven the burden is on the defendant to show contributory negligence on the part of the claimant. Yet, as recognized by the trial judge, the defendants herein did not *244 show even a “scintilla” of evidence that Teresa was contributorily negligent. The expert testimony indicated the only plausible explanation of both doors opening was the turning of the handle. Assuming, ar-guendo, this was the reason for the doors opening, the fact remains that Teresa was not the only occupant in the rear of the van. Any of the young girls could have turned the handle. Furthermore, Teresa or any of the others could have simply fallen against the door handle or grabbed the handle for support as the van turned onto the highway. Similiar equally plausible explanations can be envisioned. It is also well recognized that the test of contributory negligence of a young person of Teresa’s age is not the same as that of an adult. The child’s age, intelligence and experience under the particular circumstances must be considered and they are not expected to react in the same manner as are older or more mature persons. Savoy v. State ex rel. La. Hwy. Dept., 244 So.2d 93 (La.App. 3rd Cir. 1971); Woods v. Cappo, 232 So.2d 578 (La.App. 1st Cir. 1970).
Our conclusion is that Mr. Sharp was clearly negligent under the circumstances herein and that his negligence was a legal cause of the accident. As a result plaintiffs should be allowed recovery against Rev. Sharp’s liability carrier, the defendant, Allstate Insurance Company.
We now turn to the question of the alleged negligence of Mrs. Simpson, the driver of the Volkswagen bus.
Mrs. Simpson was 18 years of age when this accident occurred. On the day in question she had volunteered to drive the children to the above mentioned party at the request of Rev. Sharp. She was not an employee of the Air Base Road Baptist Church. Although Mrs. Simpson had used the bus a few times before the accident occurred and was familiar with the fact that the handles on the middle door were missing, under the particular facts and circumstances she was not in our opinion aware of the full extent of the danger involved. She was cautioned by Rev. Sharp to make sure the doors were closed before putting the bus in motion. She was also instructed on the method which was used to allegedly secure the rear and middle doors. The undisputed evidence indicates Mrs. Simpson did exactly as told. Once she thought the doors were secure she then checked to see if they would open by pulling on the middle door frame and having several of the children push from the inside of the bus. In addition she warned the children to stay away from and not use the rear doors, but instead to go through the front or forward door. Further we find no indication that Mrs. Simpson was driving negligently or that she failed to maintain a proper lookout. Nor is there evidence that she was negligent in supervising the children.
The driver of a motor vehicle is required to exercise reasonable and ordinary care to avoid injury to his gratuitous guest passengers. He is required to exercise a greater degree of care when children are involved. He is not bound to exercise the highest practicable degree of care, as is a common carrier, however, nor is he an insurer of the safety of his passengers. The guest passenger is entitled to rely on the assumption that the driver will use ordinary and reasonable care for his safety, and any act of negligence or fault on the part of the driver which causes injury to such a passenger gives rise to an action for damages under the general tort law of this state. LSA-C.C. Art. 2315; Favalora v. Travelers Insurance Company, 223 So.2d 702 (La.App. 4th Cir. 1969); Salley v. State Farm Mutual Automobile Insurance Company, 157 So.2d 638 (La.App. 2nd Cir. 1963); Morales v. Employers Liability Assurance Corporation, 7 So.2d 660 (La.App. 1st Cir. 1942); Rushing v. Mulhearn Funeral Home, 200 So. 52 (La.App. 2nd Cir. 1941).
The trial judge found the conduct of Mrs. Simpson to be reasonable and proper under all the circumstances, that she did everything she could within reason, *245 and that as a result her insurer was not liable. Under the facts herein we find no manifest error in this conclusion.
We consider, finally, the question of whether Cecil Edwards was negligent in causing or allowing the automobile which he was driving to strike and to fatally injure Teresa.
We have decided that because of the unusual and extraordinary circumstances which exist in this case, the trial judge correctly concluded that Edwards was free from negligence.
We have already noted that the lead car being driven by Miller, and the second car being driven by Edwards, were traveling at speeds of about 40 or 45 miles per hour. That was within the speed limit, and we consider it to be a reasonable and safe speed.
Miller, the driver of the lead vehicle, saw Teresa in the highway when he was about 125 or 150 feet from her, and he succeeded in avoiding her by veering to his left into the north bound lane of traffic and going around her. Edwards was traveling three or four car lengths behind Miller, and his view of the child on the highway was blocked until the lead vehicle veered to its left and thus made it possible for Edwards to see the child. We believe Edwards was more than two car lengths from Teresa when he first saw her, but we agree with the trial judge that he was very close to the child when he first was able to see her, and that it would have been impossible for him to have brought his car to a stop between the time he first saw her and time his car struck her. He did not realize that the object he saw was a human being.
The trial judge held that Edwards was confronted with a sudden emergency, and that although he may not have exercised the best of judgment, he did exercise due care. The court found that Edwards reduced the speed of his car and applied his brakes as soon as he saw the Miller car swerve, that Edwards also started to veer to his left, but in a moment concluded that it was better to change direction and go around the other side of the child.
We agree with the trial court that Edwards exercised due care in the emergency which confronted him, and that Edwards thus is free from fault. See Dick v. Phillips, 253 La. 366, 218 So.2d 299 (1969); Mabile v. Thibaut Farms et al., 244 So.2d 66 (La.App. 1st Cir. 1971); Windecker v. Fekete et al., 221 So.2d 887 (La.App. 1st Cir. 1969); Exner v. Flowers, 82 So.2d 47 (La.App. 1st Cir. 1955). His insurer also is not liable.
The only question remaining is that of quantum insofar as liability on the part of Allstate Insurance Co. is concerned. The parties, however, stipulated that if there was any liability on the part of the insurer —-Allstate, that it would be for the $5,000 policy limits plus any interest that has accrued.
For the above and foregoing reasons the judgment of the trial court is reversed insofar as it found Rev. Sharp free of negligence and it is hereby ordered, adjudged, and decreed that there be judgment in favor of the plaintiffs and against Allstate Insurance Company in the sum of $5,000 plus interest at the rate of 7% from date of judicial demand until paid. Costs are to be assessed at trial against both Allstate Insurance Company and the plaintiffs, in equal portions. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed to Allstate Insurance Company.
Affirmed in part and reversed in part.
HOOD, J., dissents and assigns written reasons.

. It is of course evident that had the doors not been securely closed, this would have been a cause in fact of the accident. However, the trial judge relied upon the uncon-tradicted testimony of the driver, Mrs. Simpson, that the doors were closed, secured, and checked before leaving with the children.

. But see LSA R.S. 32:53 which reads in pertinent part: “A. No person shall drive or move, nor cause or knowingly permit any vehicle owned or controlled by him to be driven or moved, on any highway of this state, at any time, any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or property.”